# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-01405-SCT

*MAURICE PRUITT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/20/2008 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BENJAMIN ALLEN SUBER |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/28/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Maurice Pruitt was indicted for both the murder of David McMillian and the aggravated assault of Keitho Plummer. Following his jury trial in the Circuit Court of Jones County, Mississippi, Second Judicial District, Pruitt was found guilty of manslaughter[1] and was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections ("MDOC"). Following denial of Pruitt's motion for a new trial, or in the alternative, judgment notwithstanding the verdict ("JNOV"), he filed timely notice of appeal.

---

[1]The jury acquitted Pruitt on the murder charge, but found him guilty of the lesser-included offense of manslaughter. As to the aggravated assault charge, the jury acquitted Pruitt.

**FACTS**

¶2. It is undisputed that on July 2, 2007, Pruitt shot and killed McMillian with a nine (.9) millimeter pistol outside of the American Legion Hut in Laurel, Mississippi. Conflicting testimony was presented at trial, not only regarding whether McMillian had his right hand hidden behind his thigh, but also whether he was in possession of a gun as he approached Pruitt. Melvin Sanders, a security guard at the American Legion Hut, and Plummer[2] claimed that McMillian's right hand was not concealed and they did not see a gun. Furthermore, Melvin Mack, the Mayor of Laurel, testified that Pruitt had admitted to him that McMillian had no gun. Conversely, Tyrone Pearson and Pruitt testified that McMillian appeared to be holding an object in his concealed right hand.

¶3. Sanders testified that he heard arguing in the parking lot around 12:00 a.m. and proceeded outside. According to Sanders, he saw Pruitt holding a gun and warned Plummer, with whom Pruitt was arguing at the time. Sanders then attempted to prevent McMillian from approaching Pruitt, but McMillian got past him. Sanders witnessed the shooting first-hand and testified that in no way did it appear that McMillian had a gun. After McMillian was shot, Sanders testified that Pruitt turned the gun toward Plummer, who was unarmed, and began firing. According to Sanders, Pruitt then jumped into a black Chevy Tahoe and fled the scene. Plummer's testimony was consistent with the testimony of Sanders, although his

---

[2]This Court notes that Plummer had an unpleasant history with Pruitt. Specifically, Plummer shot Pruitt with a pistol at the American Legion Hut on July 21, 1996. Pruitt further claimed that Plummer attempted to shoot him again on December 31, 2006, also at the American Legion Hut.

credibility was later brought into question based upon his prior altercations with Pruitt. *See* footnote 2, *supra*.

¶4.     Pruitt testified that he thought McMillian had a gun and shot him out of necessary self-defense.  According to Pruitt, McMillian was directing profanities toward him, then McMillian and Plummer walked over to a car together.  Shortly thereafter, McMillian proceeded toward him "fast," with his right hand hidden behind his thigh. Before McMillian could reach him, however, Pruitt claimed that Pearson unsuccessfully attempted to stop McMillian.  After McMillian pushed Pearson out of the way with his *"left hand,"* Pruitt testified that he began firing his .9 millimeter pistol at McMillian.  Pruitt then left the scene and went to Mayor Mack's home, where he turned himself over to authorities.  Mayor Mack testified that Pruitt had admitted to him, immediately after the incident, that the man he shot did not have a gun.

¶5.     Pearson corroborated Pruitt's testimony regarding McMillian's use of profanity, aggressive approach, and concealed right hand. Pearson testified that  McMillian went to a car, then walked quickly toward Pruitt while hiding his right hand behind his body.  When Pearson attempted to stop McMillian, he testified that he was pushed out of the way by McMillian's "shoulder."

¶6. Pruitt was indicted on counts of murder[3] and aggravated assault.[4] At trial, Pruitt moved for a directed verdict following the State's case-in-chief, which was denied. Ultimately, the jury found Pruitt guilty of the lesser-included offense of manslaughter. Pruitt subsequently moved for a new trial, or in the alternative, JNOV, which was denied. Pruitt now appeals.

**ISSUES**

¶7. On appeal, Pruitt raises the following two issues:

I. Whether the evidence was insufficient to support the verdict, as the State failed to prove beyond a reasonable doubt that Pruitt did not act in necessary self-defense.

II. Whether the verdict was against the overwhelming weight of the evidence, which establishes that Pruitt acted in necessary self-defense.

---

[3]The indictment stated that Pruitt:

on or about the 2nd day of July, 2007, A.D. did willfully, unlawfully and feloniously, with deliberate design to effect the death of [McMillian], did kill and murder [McMillian], a human being, without authority of law and not in necessary self defense, by shooting [McMillian] with a gun.

[4]The indictment provided that Pruitt:

as part of a common plan or scheme or as part of the same transaction or occurrence in said County, District and State, on or about the 2nd day of July, 2007 A.D., did purposely, knowingly or feloniously attempt to cause bodily injury to another, [Plummer], with a gun, a deadly weapon, by attempting to shoot [Plummer].

4

## ANALYSIS

I. *Whether the evidence was insufficient to support the verdict.*

¶8.     Pruitt made a post-trial motion for JNOV, which was denied by the circuit court.  "A motion for J.N.O.V. challenges the legal sufficiency of the evidence."  ***Ivy v. State***, 949 So. 2d 748, 751 (Miss. 2007) (citing ***McClain v. State***, 625 So. 2d 774, 778 (Miss. 1993)).  In ***Bush v. State***, 895 So. 2d 836 (Miss. 2005), this Court set out the standard of review for legal sufficiency, stating:

> whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." [***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968)].  However, this inquiry does not require a court to[:]
>
>> "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
>
> ***Jackson v. Virginia***, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (citations omitted) (emphasis in original).  Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render.  ***Edwards v. State***, 469 So. 2d 68, 70 (Miss. 1985) (citing ***May v. State***, 460 So. 2d 778, 781 (Miss. 1984)). . . .  However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient.  ***Edwards***, 469 So. 2d at 70 . . . .

5

***Bush***, 895 So. 2d at 843.

¶9.    In Mississippi, manslaughter is defined as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense."  Miss. Code. Ann. § 97-3-35 (Rev. 2006).  The only element in dispute in the case *sub judice* is whether Pruitt shot and killed McMillian while acting in necessary self-defense.[5]  Pruitt asserted that he was acting in necessary self-defense because he "thought [McMillian] had a gun."

¶10.   Interpreting the evidence in a "light most favorable" to the State, Pruitt's first assignment of error fails.  ***Bush***, 895 So. 2d at 843 (quoting ***Jackson***, 443 U.S. at 315).  This Court has stated that:

> [i]n order to justify the appellant's contention of self defense . . . , the record must disclose . . . that the appellant had a reasonable apprehension of a design or plan on the part of the deceased to kill him or to do great bodily harm, and furthermore that there was imminent danger of such design being accomplished.  The mere apprehension that some minor battery might have been committed upon the appellant is not sufficient to establish self-defense.

***Stennis v. State***, 234 So. 2d 611, 614 (Miss. 1970) (internal citations omitted).  Pruitt admitted that he never actually saw McMillian with a gun, and Mayor Mack testified that Pruitt told him shortly after the shooting that McMillian did not have a gun.  No witness testified to seeing McMillian with a gun.  Both Sanders and Plummer, witnesses to the shooting, testified that it did not appear as though McMillian had a gun.  Pruitt admitted

---

[5]"A killing of a human being is justifiable . . . [w]hen committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished."  Miss. Code Ann. § 97-3-15(f) (Rev. 2006).

6

firing at McMillian before the victim could raise the allegedly hidden right hand. Pruitt exercised deadly force in the absence of deadly force being used against him. Whether the jury accepted the testimony of Sanders and Plummer or the testimony of Pruitt, the outcome does not change. "[R]easonable fair-minded men in the exercise of impartial judgment[,]" **Bush**, 895 So. 2d at 843 (quoting **Edwards**, 469 So. 2d at 70), could have taken either version into consideration and reasonably found that Pruitt's use of deadly force was either unnecessary or premature and was not exercised in necessary self-defense. Accordingly, this issue is without merit.

II. *Whether the verdict was against the overwhelming weight of the evidence.*

¶11.    Pruitt made a post-trial motion for new trial, which was denied by the circuit court. "A motion for new trial challenges the weight of the evidence. A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial." **Ivy**, 949 So. 2d at 753 (citation omitted). In **Bush**, this Court set out the standard of review for weight of the evidence, stating:

> [w]hen reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. **Herring v. State**, 691 So. 2d 948, 957 (Miss. 1997). We have stated that on a motion for new trial:
>
>> the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
>
> **Amiker v. Drugs For Less, Inc.**, 796 So. 2d 942, 947 (Miss. 2000). . . . [T]he evidence should be weighed in the light most favorable to the verdict. **Herring**, 691 So. 2d at 957.

7

*Bush*, 895 So. 2d at 844.

¶12.    Viewing the evidence "in the light most favorable to the verdict," this Court cannot conclude that the circuit court's affirmance of the jury verdict "sanction[ed] an unconscionable injustice." *Id*.  The testimony of Sanders and Plummer was that McMillian did not appear to have a gun.  Post-shooting, it was determined the victim did not have a gun.  Relying on the absence of a gun or other evidence of deadly force, the jury reasonably could have determined that Pruitt did not act in necessary self-defense.  As Pruitt's testimony differed from that of Pearson regarding McMillian's actions directly before the shooting, the jury also reasonably could have questioned the credibility of their testimony based upon these inconsistencies.  In sum, weighing the evidence "in the light most favorable to the verdict[,]" the jury could reasonably have found against Pruitt.  *Id*.  As this Court cannot disagree with the jury's conclusion, it finds that this issue is without merit.

## CONCLUSION

¶13.    Based upon the aforementioned analysis, this Court affirms the Circuit Court of Jones County, Mississippi, Second Judicial District, as to Pruitt's manslaughter conviction and accompanying sentence.

¶14.    **COUNT I: CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.  GRAVES, P.J., CONCURS IN RESULT ONLY.**