KING, C.J., for the Court.
 

 ¶ 1. On January 23, 2007, Justin Turner was convicted on two counts of driving under the influence manslaughter. He was sentenced on Count I to serve twenty-five years with five years suspended and five years of post-release supervision. On Count II, Turner was sentenced to serve ten years with five years suspended and five years of post-release supervision. The sentence in Count II was ordered to run consecutively to the sentence in Count I, all in the custody of the Mississippi Department of Corrections. Aggrieved, Turner appeals and alleges the following: (1) the trial court erred in admitting the blood-alcohol evidence, and (2) the trial court erred in failing to properly instruct the jury, thus, denying Turner a fair trial.
 

 ¶2. We find that Turner’s issues are without merit. Therefore, we affirm the judgment of the trial court.
 

 FACTS
 

 ¶ 3. On February 18, 2006, after having spent the day with his family, Bailey Trippe and Kathy Krystine Harris were at Trippe’s parents’ home watching cartoons and looking after Trippe’s two-year-old daughter. Trippe and Harris left the house at approximately 11:40 p.m. in Harris’s vehicle, a green 2000 Mercury Mountaineer.
 

 ¶ 4. Shortly thereafter, a collision occurred on Goshen Road near Nazary Lane between Highway 25 and Highway 16 in Leake County, Mississippi, which involved the vehicle belonging to Turner and the vehicle driven by Trippe. The exact events leading up to the collision were disputed.
 

 ¶ 5. When Deputy Jim Moore of the Leake County Sheriffs Office arrived on the scene of the accident, he attempted to resolve ambiguities surrounding the accident by asking Turner what happened. Turner replied that he was coming up Goshen Road toward Highway 16, when the vehicle driven by Trippe came out in front of him. Unable to stop, Turner rear-ended Trippe’s vehicle, knocking the vehicle into a tree. As a result, the vehicle burst into flames. Trippe and Harris were passengers in the burning vehicle. Unable to escape the burning vehicle, both Trippe and Harris died as a result of the fire.
 
 *3
 
 Testimony by Chance Wiskus, Turner’s cousin, contradicts Turner’s version of the events leading up to and causing the collision.
 

 ¶ 6. Wiskus testified that after attending a house party, which was also attended by Turner, he left the party and went to Turner’s house. When Wiskus arrived Turner was in his truck on the phone with Trippe. Wiskus got into Turner’s truck and overheard what appeared to be an angry conversation between Trippe and Turner. Wiskus testified that Turner and Trippe agreed to meet at the end of North Jordan Street to fight. Wiskus stated that while on Goshen Road, Turner rear-ended Trippe’s vehicle twice. As a result, Trippe’s vehicle went off the road, hit a tree, and burst into flames. Wiskus also testified that after failed attempts to remove the passengers from the burning vehicle, Wiskus, Chris Turner,
 
 [1]
 
 Nick Moss,
 
 [2]
 
 and Lauren,
 
 [3]
 
 left the scene of the accident in Chris’s ear which had followed them in their pursuit, leaving Turner and Tory Turner
 
 [4]
 
 behind waiting for emergency assistance.
 

 ¶ 7. Deputy Moore testified that while making an initial investigation of the scene and attempting to resolve ambiguities by questioning Turner, he smelled alcohol coming from Turner’s person and, thus, inquired as to Turner’s consumption of alcohol. As a result of Deputy Moore’s observation of the accident scene and the smell of alcohol on Turner, he asked Turner to submit a blood sample to determine his blood-alcohol level. After Turner agreed, Deputy Moore asked him to sit in the patrol car until someone could take him to have his blood drawn.
 

 ¶ 8. Soon thereafter, Deputy Mark Wil-cher, criminal investigator and accident re-constructionist for the Leake County Sheriffs Department, arrived and took control of the scene. During this time, Deputy Wilcher spoke with Deputy Moore and questioned Turner while he was in the patrol car. After questioning Turner, Deputy Wilcher instructed Deputy Cornelius Turner (Deputy Turner) to transport Turner to Leake Memorial Hospital in Carthage, Mississippi to have blood drawn to determine Turner’s blood — alcohol level. While at the emergency room of the hospital, Laura Kelly (Kelly), a medical laboratory technician, drew Turner’s blood for testing. Both Kelly and Vicky Moody, a registered nurse, signed the consent form as witnessing Turner’s consent to draw blood. The blood samples were secured and returned to Deputy Wilcher at the scene of the accident, who subsequently transported the samples to the Mississippi Crime Laboratory.
 

 ¶ 9. During trial, hearings were held on motions to suppress Turner’s statement to Deputy Moore and the blood-test evidence. During the first hearing, the trial court ruled the statement inadmissible. However, prior to the hearing, Deputy Moore’s testimony regarding Turner’s involvement in the accident and alcohol consumption was heard by the jury, and no instructions were given to the jury to disregard that testimony. Thereafter, the trial judge ruled that Turner’s constitutional rights were not violated, and the blood test was admissible because voluntary consent was
 
 *4
 
 given in the presence of two witnesses. After the prosecution’s rebuttal testimony, Turner renewed all previous motions and offered a motion for acquittal and motion to suppress the blood-alcohol test. The trial court ruled that Turner’s blood was lawfully seized since he initially consented to the blood sample and probable cause existed to obtain a blood sample.
 

 ¶ 10. On January 12, 2007, a jury in the Circuit Court of Leake County returned a guilty verdict against Turner for two counts of DUI manslaughter.
 

 ANALYSIS
 

 I. WHETHER THE EVIDENCE OF THE BLOOD TEST WAS ADMISSIBLE
 

 ¶ 11. The applicable standard of review as to the admissibility of evidence is abuse of discretion.
 
 Shaw v. State,
 
 938 So.2d 853, 857(¶ 9) (Miss.Ct.App.2005).
 

 ¶ 12. Turner’s first allegation of error is that the trial court erred in admitting the blood-alcohol analysis into evidence. Turner argues that the trial court erred in admitting the results of his blood-alcohol level into evidence because: (a) Turner was seized within the meaning of the Fourth Amendment; (b) the unconstitutional seizure was not cured; and (c) Turner’s consent was not voluntarily given.
 

 a. Whether Turner Was Seized Within the Meaning of the Fourth Amendment
 

 ¶ 13. Under
 
 Terry v. Ohio,
 
 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an individual is seized within the meaning of the Fourth Amendment, “whenever a police officer accosts an individual and restrains his freedom to walk away.” Turner contends that the initial
 
 “Terry-type
 
 encounter” escalated almost immediately to an arrest without probable cause when Deputy Moore asked Turner what had happened and inquired as to whether Turner had been drinking. Turner testified that after acknowledging that he had rear-ended Trippe’s vehicle and that he had consumed one beer prior to the accident, he was immediately placed in the back of a patrol car to be transported to the hospital for a blood-alcohol test. Turner alleges he was not read his
 
 Miranda
 
 rights, and, thus, his seizure was unconstitutional and in violation of the Fourth Amendment.
 

 ¶ 14. Turner was not seized within the meaning of the Fourth Amendment when he initially made the statement as to his involvement in the collision and his alcohol consumption prior to the accident. According to
 
 Alexander v. State,
 
 736 So.2d 1058, 1063(¶ 11) (Miss.Ct.App.1999), “[e]us-todial interrogation [within the meaning of the Fourth Amendment] is defined as ‘questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ ” The initiation of questioning by law enforcement of the suspect who is in custody triggers
 
 Miranda
 
 warnings.
 
 Id.
 
 However, in “a non-custodial setting where interrogation is investigatory in nature (general on-the-scene investigation),
 
 Miranda
 
 warnings are not required in order that a defendant’s statements be admissible. Even in this setting, statements must be freely and voluntarily given in order to be admissible.”
 
 Hopkins v. State,
 
 799 So.2d 874, 878(¶ 7) (Miss.2001) (citation omitted).
 

 ¶ 15. When Deputy Moore arrived on the scene, he began his initial investigation as to how the accident occurred. Deputy Moore observed a burning vehicle containing two possibly deceased individuals, a second damaged vehicle, and Turner and an unidentified female (later identified as Tory Turner) watching from afar. In an
 
 *5
 
 effort to gain some clarity of the situation, Deputy Moore approached Turner and Tory and inquired as to what had happened. Smelling alcohol coming from Turner, Deputy Moore asked about Turner’s involvement and possible alcohol consumption. When Turner disclosed his involvement and amount of alcohol consumption, Turner was not placed under arrest or detained. However, Deputy Moore requested that Turner submit to a blood test to determine his blood-alcohol content. Turner agreed. Subsequently, Turner was placed in the back of a patrol car to await transport to the hospital for the blood draw.
 

 ¶ 16. When Deputy Wileher arrived on the scene, he also questioned Turner as to what had happened and his level of involvement. Turner acknowledged his involvement in the collision and again consented to have blood drawn to determine his blood-alcohol level. Although Turner was never handcuffed, advised of his rights, or told that he was under arrest, he was placed in the back of a patrol car unable to open the door of his own free will. Therefore, according to the definition of seized under
 
 Terry,
 
 when Turner made the statement to Deputy Wileher, he was considered seized within the meaning of the Fourth Amendment. Turner’s first statement and consent were made during Deputy Moore’s general investigation of an accident scene and not while in custody; hence, when Turner informed Deputy Moore of his involvement in the accident and consented to give a blood sample, he was not seized at the time. Therefore, this issue is without merit.
 

 b. Whether the Consent Was Voluntary
 

 ¶ 17. “In
 
 Schneckloth v. Bustamante,
 
 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the United States Supreme Court held that when determining whether consent to a warrantless search was given voluntarily, [the court must examine] the totality of the circumstances.”
 
 Logan v. State,
 
 773 So.2d 338, 343(¶ 12) (Miss.2000). To be valid, the consent must be voluntary.
 
 Gazaway v. State,
 
 708 So.2d 1385, 1388(¶10) (Miss.Ct.App.1998). In reviewing the trial court’s determination of the voluntariness of a consent to a blood draw, the Court applies an abuse of discretion standard.
 
 Comby v. State,
 
 901 So.2d 1282, 1285(¶ 5) (Miss.Ct.App.2004). A trial court has broad discretion when addressing the voluntariness of a consent.
 
 Id.
 
 We are obligated to affirm the decision of the trial court, unless it is apparent that such discretion has been abused.
 
 Id.
 

 ¶ 18. Turner contends that his consent at the hospital to draw a blood sample to determine his blood-alcohol level was not voluntary and was defective for the following reasons stated in his brief:
 

 (1) the consent was not the product of an intervening act of free will; (2) the consent was sufficiently attenuated by the initial illegal seizure/arrest; (3) the consent was a flagrant disregard of his rights; (4) the blood draw was done as a routine procedure, not based on probable cause; and (5) the blood draw was done improperly by having witnesses sign same [consent form] without actually witnessing the act and/or hearing the rights read to Turner.
 

 Turner does not suggest that he at any time revoked or attempted to revoke the consent, which was first given to Deputy Moore, to have a blood sample drawn. This first consent was given in a noncustodial general-on-the-scene investigation. That consent remained valid until it was revoked, or the blood draw was completed. Because the first consent given to Deputy Moore was valid, it was not necessary that the second consent given to Deputy Wil-eher be valid, as it was merely surplusage.
 

 
 *6
 
 ¶ 19. The Court notes that pursuant to Mississippi Code Annotated sections 63-11-8(1) and (2) (Rev.2004), “(1) [t]he operator of any motor vehicle involved in an accident that results in death shall be tested for the purpose of determining his alcohol content or drug content.... (2)[i]f any investigating law enforcement officer has reasonable grounds to believe that person is the operator of the motor vehicle involved in an accident that has resulted in a death.” In a factually similar case,
 
 Turner v. State,
 
 726 So.2d 117, 127(¶36) (Miss. 1998), the defendant appealed his conviction of the crime of driving under the influence resulting in death, alleging that the trial court erred in admitting the blood-alcohol report because the blood draw violated his Foui*th Amendment right against unreasonable searches and seizures since he did not sign a consent form. The supreme court held that although the defendant had not been lawfully arrested when his blood was drawn for testing, the officer did have probable cause to detain the appellant and order a blood draw, because according to
 
 Schmerber v. California,
 
 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the taking of blood samples from a defendant does not violate his Fourth Amendment rights where probable cause exists for the defendant’s arrest.
 
 Turner,
 
 726 So.2d at 127(¶ 36) (Miss. 1998).
 

 ¶20. Turner’s acknowledgment of his involvement in the accident, his admission to having consumed alcohol prior to the accident, and the smell of alcohol on his person gave Deputy Moore reasonable grounds to believe that Turner was involved in the accident that resulted in the death of two individuals. These factors gave Deputy Moore the authority to obtain a blood sample for testing Turner’s blood-alcohol level.
 

 ¶21. For the aforementioned reasons, this issue is without merit.
 

 c.
 
 Whether the Unconstitutional Seizure Was Cured by Consent
 

 ¶ 22. The applicable standard of review as to whether an illegal arrest tainted the defendant’s consent is de novo.
 
 United States v. Richardson,
 
 949 F.2d 851, 858 (6th Cir.1991).
 

 ¶23. Turner asserts that his alleged consent to a blood sample did not cure the unconstitutional seizure. We find this issue is moot. We have found that Turner was not unconstitutionally seized within the meaning of the Fourth Amendment when he first acknowledged his involvement and gave consent to Deputy Moore for a blood sample. Therefore, this assignment of error is without merit.
 

 II. WHETHER TURNER WAS DENIED A FAIR TRIAL BASED ON JURY INSTRUCTIONS
 

 ¶ 24. The second allegation of error is that Turner was denied a fair trial because the jury was not properly instructed.
 

 ¶ 25. Turner contends that jury instruction S — 1 should have included a proximate cause statement. He contends that the failure to include a proximate cause statement in S — 1 allowed the jury to find him guilty without finding that the death of Trippe and Harris were a result of Turner’s actions.
 

 ¶26. Instruction S-l reads as follows:
 

 [T]he Court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that at the time and place charged in Count One of the indictment and testified about, that the Defendant, Justin Brent Turner, did willfully, unlawfully, and fe-loniously operate a motor vehicle while under the influence of intoxicating li
 
 *7
 
 quor, having eight one-hundredths percent (.08%) or more by weight volume of alcohol in his blood, and in a negligent manner caused the death of Bailey A. Trippe, then it is your duty to find the defendant guilty as charged in Count One.
 

 You are further instructed that if you believe from the evidence in this case beyond a reasonable doubt that at the time and place charged in Count Two of the indictment and testified about, that the Defendant, Justin Brent Turner, did willfully, unlawfully and feloniously operate a motor vehicle while under the influence of intoxicating liquor, having eight one-hundredths percent (.08%) or more by weight volume of alcohol in his blood, and in a negligent manner caused the death of Kathy Krystine Harris, then it is your duty to find the defendant guilty as charged in Count Two.
 

 ¶ 27. Jury instructions are to be read as a whole rather than in isolation.
 
 Burton v. Barnett,
 
 615 So.2d 580, 583 (Miss.1993). If after doing so, the totality of the instructions fairly and accurately state the law and facts, this Court will not find error.
 
 Id.
 
 “When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Wilkerson v. State,
 
 731 So.2d 1173, 1180(¶25) (Miss.1999) (citation omitted).
 

 ¶ 28. The fact that jury instruction S-l is an accurate statement of the law under Mississippi Code Annotated section 63 — 11— 30(5) (Rev.2004) is not questioned. The jury instruction specifies the elements that the prosecution was required to prove in order to find Turner guilty of DUI manslaughter. Those elements are as follows: (1) Turner was operating a motor vehicle; (2) while doing so, his blood-alcohol level was at least .08%, (3) and he negligently caused the deaths of Harris and Trippe. Jury instruction S-l required the jury to convict Turner if it found that these elements had been proven by the prosecution. It did not, however, instruct the jury that it should find Turner not guilty if any of these elements were not proven.
 

 ¶ 29. However, jury instruction D-5, which was given, reads as follows:
 

 In every criminal case, a person on trial, such as Justin Turner, is presumed to be innocent until his guilt is established by the evidence beyond a reasonable doubt.
 

 Before the presumption of innocence leaves Justin Turner, every material allegation of the charge must be proven by the evidence beyond a reasonable doubt. The presumption of innocence accompanies and abides with Justin Turner to each and every material allegation of the charge through each stage of the trial until it has been overcome by the evidence beyond a reasonable doubt.
 

 If any of the material allegations of the charge are not proven beyond a reasonable doubt, you must give Justin Turner the benefit of the doubt and find •him not guilty.
 

 Jury instruction D-5 informed the jury that the prosecution was required to prove each element of its case. When read in conjunction with instruction S-l, it becomes clear that the jury was properly instructed.
 

 ¶ 30. Furthermore, while alleging that the trial court erred in failing to give a proximate cause instruction, Turner did not make reference to or mention the need for proximate cause language within the instruction in his objection at trial. Turner’s objection was merely a request for a stronger or different version of instruction S-l. In his limited objection to instruction S-l, Turner stated, “Other than what the court said about the negligent manner. No objection except for the request by co-
 
 *8
 
 counsel about a stronger or different version of this in a negligent manner.” “[F]ailure to challenge a given instruction or offer another in its place renders this assignment of error meritless.”
 
 Lockett v. State,
 
 517 So.2d 1317, 1333 (Miss.1987) (overruled in part on other grounds). There is no indication that Turner offered an alternative instruction to instruction S-1.Therefore, Turner’s assignment of error that he was denied a fair trial because the jury was not properly instructed with regard to instruction S-l is without merit.
 

 CONCLUSION
 

 ¶ 31. For the foregoing reasons, we affirm the judgment of the Circuit Court of Leake County.
 

 ¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF COUNT I, DUI MANSLAUGHTER, AND SENTENCE OF TWENTY-FIVE YEARS WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION; COUNT II, DUI MANSLAUGHTER, AND SENTENCE OF TEN YEARS WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING AND BARNES, JJ., CONCUR IN RESULT ONLY.
 

 [1]
 

 . Chris Turner is Turner's brother.
 

 [2]
 

 . Nick Moss was Turner’s friend.
 

 [3]
 

 . Lauren was Chris Turner's girlfriend; however, the record does not provide Lauren's last name.
 

 [4]
 

 .Tory Turner was Turner’s girlfriend at the time of the accident, but she subsequently married Turner.