# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-02001-COA

**DUANE JOHN A/K/A DEWAYNE JOHN**          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/25/2013 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | P. SHAWN HARRIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SIX COUNTS OF DRIVING UNDER THE INFLUENCE AND NEGLIGENTLY CAUSING THE DEATH OF ANOTHER AND SENTENCED TO FIFTEEN YEARS ON EACH COUNT, WITH THE SENTENCES TO RUN CONSECUTIVELY, AND WITH FIFTEEN YEARS SUSPENDED, FOR A TOTAL OF SEVENTY-FIVE YEARS TO SERVE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 12/01/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.

### CARLTON, J., FOR THE COURT:

¶1.     A Lafayette County jury convicted Duane John on six counts of DUI manslaughter.[1]

---

[1] *See* Miss. Code Ann. § 63-11-30(5) (Supp. 2015).

John now appeals, arguing that the verdict was against the overwhelming weight of the evidence. John specifically argues that the trial court erred by allowing John's blood-alcohol test results to be entered into evidence. Finding no error, we affirm the trial court's judgment.

**FACTS**

¶2.     On the evening of December 28, 2012, John left his sister's house in Philadelphia, Mississippi, and got into his vehicle along with his girlfriend, two other adults, and John's five children. While trying to pass another vehicle on the road, John lost control of his vehicle, causing it to flip over and sink into a creek. John; his girlfriend, Deanna Jim; and another adult, Dale Chickaway, were able to climb out of the vehicle. One adult, Diane Chickaway, along with John's five children, died as a result of the accident. A Neshoba County jury subsequently indicted John for six counts of DUI manslaughter.

¶3.     At a trial held in Lafayette County[2] on September 24-25, 2013, the jury heard testimony from Jonathan Spears, a DUI officer for the Neshoba County Sheriff's Department. Officer Spears testified that he responded to the scene of the accident and observed that emergency personnel had already arrived. Spears testified that after the wrecker pulled John's vehicle from the creek, he observed several alcoholic-beverage boxes, cans, and bottles inside of the vehicle. Officer Spears explained that emergency personnel

---

[2] The record reflects that the Neshoba County Circuit Court granted John's motion to transfer venue and ordered that the trial be transferred to the Lafayette County Circuit Court.

transported John to the hospital before law enforcement could interview him on the scene.[3]

On December 31, 2012, after John had been discharged from the hospital, Officer Spears interviewed John at the Neshoba County Jail. John provided a statement wherein he admitted to purchasing and drinking beer on the night of the accident. John was then read his *Miranda*[4] rights and placed under arrest. This appeal addresses the circumstances prior to John's discharge from the hospital and specifically pertains to officers obtaining a blood sample from John and testing his blood for alcohol content.

¶4.     Kevin Baysinger, an investigator with the Neshoba County Sheriff's Department, testified that he received a call from Neshoba County General Hospital in the early morning hours of December 29, 2012, regarding a car accident. When Investigator Baysinger arrived at the hospital, he met with John and informed him that law enforcement suspected that John was under the influence of alcohol at the time of the accident. John signed a consent form allowing for a blood sample to be drawn. Investigator Baysinger then instructed the hospital staff to draw blood from John with a blood kit provided by the Mississippi Crime Lab. Even though Investigator Baysinger informed John that he was suspected of driving while under the influence of alcohol at the time of the accident, Investigator Baysinger admitted that he did not read John his *Miranda* rights before John consented to have his blood drawn. The record also reflects that Investigator Baysinger knew John from his previous DUI arrest.

¶5.     Defense counsel objected to the State's attempt to introduce John's signed consent

---

[3] As a result, no *Miranda* warning was read to John at the scene of the accident.

[4] *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

form and his blood samples into evidence. The trial court held a suppression hearing on the matter outside of the presence of the jury. The defense argued that although John signed the consent form, nothing on the consent form advised John of his right to refuse to provide a blood sample. John also testified during the suppression hearing, stating that he did not give his consent for Investigator Baysinger to draw his blood and take a sample. The trial judge ultimately overruled the defense's objection, and the trial court admitted the signed consent form and blood samples into evidence, explaining the following:

> [W]hen you consider all the totality of all the evidence in the case where [John] was transported from the scene of the accident to the hospital, [there were] intoxicants, and he was removed from that scene and was transported to a hospital where he [knew] . . . he was being investigated for the crime of driving under the influence of intoxicants, and that he was aware of the consequences of signing the consent to a urine and blood test without the necessity of a *Miranda* warning for that time. I don't think that [a] *Miranda* warning is necessary for a situation such as this[.]

¶6.     John Stevenson from the Mississippi Crime Lab testified that he performed the blood-alcohol analysis on John's blood samples. Stevenson testified that the analysis showed that John's blood-alcohol level was .18 percent, well over the legal limit.[5] The jury also heard testimony from Dr. Erin Barnhart, a forensic pathologist and the deputy chief medical examiner at the Mississippi State Medical Examiner's Office, who confirmed that the cause of death for all six victims was drowning.

¶7.     The jury convicted John on six counts of DUI manslaughter, and the trial judge sentenced John to serve six consecutive fifteen-year terms in the custody of the Mississippi

---

[5] The transcript reflects that the defense objected to the results from John's blood test being entered into evidence based on its previous issues with whether or not John gave his consent for the blood samples. The trial court overruled the defense's objection.

Department of Corrections, for a total of ninety years, and then suspended fifteen of those years, leaving seventy-five years to serve.[6] John filed a motion for a new trial, which the trial court denied. John now appeals his conviction and sentence.

**STANDARD OF REVIEW**

¶8. "When reviewing a trial court's ruling on the admission or suppression of evidence, [the appellate court] must assess whether there was substantial credible evidence to support the trial court's findings." *Culp v. State*, 933 So. 2d 264, 274 (¶26) (Miss. 2005). "The admission of evidence lies within the discretion of the trial court and will be reversed only if that discretion is abused." *Id.* An appellate court "can reverse a trial court's denial of a motion to suppress only: if the incorrect legal principle was applied; if there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of *Miranda* rights; and if the denial was a result of manifest error." *Setzer v. State*, 54 So. 3d 226, 230 (¶15) (Miss. 2011).

¶9. When reviewing a claim that the verdict is against the overwhelming weight of the evidence, "this Court asks whether the verdict 'is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Rivera-Guadiana v. State*, 71 So. 3d 1221, 1225 (¶16) (Miss. Ct. App. 2011) (citing *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005)). Further, "[a] reversal is warranted only if the trial court abused its discretion in denying a motion for new trial." *Stewart v. State*, 69 So.

---

[6] Section 63-11-30(5) mandates: "Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another . . . shall, upon conviction, be guilty of a separate felony for each victim who suffers death[.]"

5

3d 768, 769 (¶6) (Miss. Ct. App. 2011) (citing *Pruitt v. State*, 28 So. 3d 585, 588 (¶11) (Miss. 2010)).

¶10.    Furthermore, the determination of whether consent to draw blood was valid constitutes a question of fact, and we review the trial court's findings of fact for clear error. *Irby v. State*, 49 So. 3d 94, 99 (¶¶13-14) (Miss. 2010); *see also Setzer*, 54 So. 3d at 231-32 (¶¶19-20); *Goff v. State*, 14 So. 3d 625, 641 (¶49) (Miss. 2009); *Cutchens v. State*, 310 So. 2d 273, 276 (Miss. 1975) (voluntariness of consent determined by analyzing the totality of circumstances).

## DISCUSSION

¶11.    John attacks the validity and sufficiency of his consent to the testing of his blood and also attacks the verdict as being against the overwhelming weight of the evidence.  John specifically argues that the trial court erred in allowing his blood-test results into evidence. John claims that the consent form he signed at the hospital prior to his blood test is insufficient to constitute consent, because "it contains no indication of any waiver on behalf of John of his right to refuse the drawing of the sample."  John asserts that, due to the failure to advise him of his rights under the Constitution to be free from unreasonable searches, the evidence gained from that search is fruit of the poisonous tree and should not have been admitted into evidence.  As a result, John argues that his subsequent conviction is tainted and should be reversed.

### I.    Consent

¶12.    John submits that if he had been at the police station, instead of the hospital, he would

6

have been given a different set of rights prior to signing the consent form, including notice that he had the right to refuse the blood-alcohol test and that the results could be used against him. John asserts that Investigator Baysinger admitted at trial that nothing on the consent form advised John that he had a right to refuse to consent to the blood test. In addressing John's issues on appeal, we will first address the sufficiency of the trial court's factual finding that the circumstances established that John freely, knowingly, and voluntarily consented to the withdrawal and testing of his blood for alcohol.

¶13.    In *Irby*, 49 So. 3d at 99 (¶¶13-14), the supreme court explained:

> Voluntary consent to a search eliminates an officer's need to obtain a search warrant. The question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. In addition to voluntary consent, a knowledgeable waiver of this right to be free from unreasonable search also is required.

(Internal citations and quotation marks omitted). John claims that in the present case, "knowledgeable waiver" is missing from the elements of consent, and therefore, he provided no consent to providing a blood sample. John argues that as a result, his blood-test results should not have been admitted into evidence in the present case. Jurisprudence, however, reflects that valid consent constitutes a question of fact and can be established by the totality of the facts and circumstances in the absence of a written waiver. *See generally Wash v. State*, 790 So. 2d 856, 859 (¶¶8-9) (Miss. Ct. App. 2001); *see also Setzer*, 54 So. 3d at 231-32 (¶¶19-20) (finding that the facts established valid consent to draw blood in the absence of written consent).

¶14.    Neither probable cause nor a warrant is required where a valid consent was provided

prior to drawing blood to test for alcohol content.[7] In this case, valid voluntary consent renders the issue of probable cause moot. *See Irby*, 49 So. 3d at 99 (¶¶13-14). Again, the question as to whether consent was in fact voluntary is a question of fact to be determined under the totality of the circumstances. *Id.* at (¶13). The *Irby* court defined "knowledgeable waiver" as "consent where the defendant knows that he or she has a right to refuse, being cognizant of his or her rights in the premises." *Id.* at 100 (¶15) (citation omitted). An abuse-of-discretion standard of review applies to the trial court's determination that a valid voluntary consent was established under the totality of the circumstances. *Id.* at (¶16); *see also Deeds v. State,* 27 So. 3d 1135, 1140-41 (¶15) (Miss. 2009).[8]

¶15.    The consent established in this case is similar to that established in *Wash*, 790 So. 2d at 859 (¶¶8-9), where the circumstances showed valid, voluntary consent existed for a blood-alcohol test. As stated, the determination as to whether valid consent was given constitutes a question of fact. *See Goff*, 14 So. 3d at 641 (¶49). In this case, the record reflects evidence that law enforcement asked John for his consent to draw his blood for testing, and that John provided verbal and written consent to provide blood samples.

¶16.    During the suppression hearing, the trial judge heard testimony from Investigator Baysinger, who testified that he informed John at the hospital that law enforcement suspected that John was under the influence of alcohol while operating the vehicle at the time of the

---

[7] *See Whitaker v. State*, 146 So. 3d 333, 337 (¶14) (Miss. 2014).

[8] *See Wash*, 790 So. 2d at 859 (¶¶8-9) (The circumstances showed consent to draw blood existed where the defendant was "unwilling to take a breathalyser test, but would take any other test."); *see also Turner v. State*, 12 So. 3d 1, 5 (¶¶17-18) (Miss. Ct. App. 2008).

accident. Investigator Baysinger testified that he told John that since fatalities occurred in the accident, law enforcement needed to draw blood from all of the drivers involved. He then asked John if he would consent to having his blood drawn. As stated, John agreed to have his blood drawn, and he signed a consent form allowing for a blood sample to be drawn. Investigator Baysinger then instructed the hospital staff to draw blood from John for testing purposes. The record shows that John was not under arrest or in custody at the time he consented to the drawing and testing of his blood; rather, John provided his consent in writing while at the hospital in a noncustodial environment.[9] John also makes no argument or assertion that he revoked consent at any time or attempted to revoke consent. *See Turner v. State*, 12 So. 3d 1, 5 (¶18) (Miss. Ct. App. 2008).

¶17. Investigator Baysinger testified that while at the hospital, John appeared to understand what was going on around him and seemed aware of his circumstances. He confirmed that John appeared to "understand that he knowingly and voluntarily granted permission" for Investigator Baysinger to take a blood sample. Investigator Baysinger also confirmed that he had previously arrested John for a DUI. Defense counsel stated that upon DUI arrests, police officers read the defendants a form at the police station, which lists their rights, including the right to refuse to consent to testing. Defense counsel then questioned Investigator Baysinger about the events that happened at the hospital just prior to John providing blood samples, asking: "Did you cover everything on that form that you would read in the police station, or did you just read what was on the card?" Investigator Baysinger

---

[9] *See and compare Irby*, 49 So. 3d at 100 n.2.

9

replied, "No sir, I just asked him if he would give blood." John also testified during the suppression hearing, stating that he gave no consent for Investigator Baysinger to draw his blood and take a sample for testing. As stated previously, the record reflects that John was familiar with the criminal-justice system and that Investigator Baysinger knew John from a prior DUI incident.

¶18. After hearing testimony from Investigator Baysinger and John, as well as the arguments from the State and the defense, the trial judge overruled the defense objection. In making his ruling, the trial judge found that Investigator Baysinger's testimony reflected that John possessed awareness of the consequences of signing the consent to a urine and blood test.[10] The trial court held that "when you consider all the totality of all the evidence . . . I don't think that [a] *Miranda* warning is necessary for a situation such as this[.]" The trial court thus determined that the totality of the circumstances established that John's consent was valid. The transcript shows that the defense later objected to the results from John's blood-alcohol test being admitted into evidence, explaining that the objection was based on "the reasons that I've objected before that have to do with . . . consent." The trial court overruled this objection.

¶19. The record of the suppression hearing reflects substantial credible evidence supporting the trial judge's finding that the totality of the circumstances established that John provided

---

[10] Lacandra Clemons, the phlebotomist at the Neshoba County General Hospital who drew blood from John on December 29, 2012, testified after the suppression hearing. Clemons testified that she did not have any conversations with John during his treatment or while she drew his blood.

10

valid, voluntary consent to provide blood samples for blood-alcohol testing.[11]  Therefore, John's consent was valid until revoked by John or until completion of the blood draw. *Turner*, 12 So. 3d at 5 (¶18).  We therefore find no abuse of discretion in the trial court's admission of this evidence.  *See Longstreet v. State*, 592 So. 2d 16, 19 (Miss. 1991); *Cutchens*, 310 So. 2d at 276 (voluntariness of consent determined by analyzing totality of circumstances).

## II.    Overwhelming Weight of the Evidence

¶20.    John also attacks his conviction as being against the overwhelming weight of the evidence.  The State was required to prove the elements of DUI manslaughter  beyond a reasonable doubt; namely, that John operated a motor vehicle while under the under influence of intoxicating liquor, having a blood-alcohol concentration of eight one-hundredths percent or more and, in a negligent manner, caused the death of the six victims.  Miss. Code Ann. § 63-11-30(5) (Supp. 2015).  We now turn to the record to determine whether the verdict is against the overwhelming weight of the evidence, and whether allowing the verdict to stand would result in an unconscionable injustice.  *See Rivera-Guadiana*, 71 So. 3d at 1225 (¶16).

¶21.    Officer Spears testified that after the wrecker pulled John's vehicle from the creek, he observed several alcoholic-beverage boxes, cans, and bottles inside of the vehicle.[12]

---

[11] In *Goff*, 14 So. 3d at 641 (¶49), the supreme court acknowledged that "as a consequence of adopting the voluntariness test for consent searches . . . the subject's knowledge of the right to refuse is a factor to be taken into account, [but] the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *See and compare Green v. State*, 710 So. 2d 862, 864-66 (¶¶6-11) (Miss. 1998).

[12] Three days after the accident, John provided a statement admitting to purchasing and drinking beer on the night of the accident.

Investigator Baysinger testified that after receiving a call from Neshoba County General Hospital, he arrived at the hospital and met with John, and informed him that law enforcement suspected that John was under the influence of alcohol at the time of the accident. John then verbally agreed to sign a consent form allowing for a blood sample to be drawn, and also provided his signature on the consent form. John later provided a statement to law enforcement officers admitting that he purchased and consumed alcohol on the night of, and prior to, the accident. John Stevenson from the Mississippi Crime Lab testified that the blood-alcohol analysis showed that John's blood-alcohol level was .18 percent. The jury also heard testimony from Dr. Barnhart, confirming that the cause of death for all six passengers was drowning.

¶22. We recognize that "[t]he jury is the sole judge of the weight of the evidence and the credibility of the witnesses." *Williams v. State*, 64 So. 3d 1029, 1033 (¶13) (Miss. Ct. App. 2011) (citing *Nix v. State*, 8 So. 3d 141, 146 (¶26) (Miss. 2009)). After our review, we cannot find that the jury's guilty verdict is so against the overwhelming weight of the evidence as to sanction an unconscionable injustice. *Rivera-Guadiana*, 71 So. 3d at 1225 (¶16). As a result, we cannot find that the trial court abused its discretion in denying John's motion for a new trial. We therefore affirm the trial court's judgment.

¶23. **THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT OF CONVICTION OF SIX COUNTS OF DRIVING UNDER THE INFLUENCE AND NEGLIGENTLY CAUSING THE DEATH OF ANOTHER AND SENTENCE OF FIFTEEN YEARS ON EACH COUNT, WITH THE SENTENCES TO RUN CONSECUTIVELY, AND WITH FIFTEEN YEARS SUSPENDED, FOR A TOTAL OF SEVENTY-FIVE YEARS TO SERVE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**